UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESLIE WATTS,

   Plaintiff,

    v.

PARKING MANAGEMENT, *et al.*,

   Defendants.

Civil Action No. 02-2132 (CKK)

**MEMORANDUM OPINION**
(March 12, 2006)

Following this Court's April 14, 2004 Memorandum Opinion and Order, only one count remains in the above-captioned action: Count IV of Plaintiff's Amended Complaint, which alleges that Defendants Parking Management, Inc., Mitchell Blankstein, Kingdon Gould, Jr., and Kingdon Gould III (collectively, "Defendants") tortiously interfered with Plaintiff's rights in violation of Section 510 of the Employee Retirement Income Security Act, as amended ("ERISA"), 29 U.S.C. § 1140. *See* Pl.'s Am. Compl. ¶¶ 30-34 (Count IV – Section 510 ERISA Claim); *see also Watts v. Parking Mgmt.*, Civ. No. 02-2132 (D.D.C. Apr. 14, 2004) (memorandum opinion and order granting Defendants' motion to dismiss with respect to Counts I, II, III, and V of Plaintiff's Amended Complaint). Currently before the Court is Defendants' Motion for Summary Judgment with respect to Count IV of Plaintiff's Amended Complaint, Plaintiff's Opposition, and Defendant's Reply. Upon a searching examination of these filings, the attached exhibits, the relevant case law, and the entire record herein, the Court shall grant Defendants' Motion for Summary Judgment.

**I: BACKGROUND**

Plaintiff's employment with Defendant Parking Management, Inc. ("PMI") was terminated on May 18, 2001. *See* Defs.' Stmt. of Mat. Facts ¶ 1; Pl.'s Resp. ¶ 1. Prior to the termination of his

employment, Plaintiff was a party to a Salary Continuation Agreement (hereinafter, "the Plan" or "the Agreement") which provided for, *inter alia*, the payment of retirement benefits to Plaintiff upon his retirement from PMI on or after age 60. *See* Defs.' Stmt. of Mat. Facts ¶ 2; Pl.'s Resp. ¶ 2. When his employment was terminated in 2001, Plaintiff was only 56 years old, thereby allowing Defendant to escape the parameters of the Agreement. *See* Defs.' Stmt. of Mat. Facts ¶ 3; Pl.'s Resp. ¶ 3.

Prior to his termination, Plaintiff retained counsel because he believed that Defendants were "going to run me off so they would not have to give me my salary continuation." *See* Defs.' Stmt. of Mat. Facts ¶ 4; Pl.'s Resp. ¶ 4. Before he was terminated, Plaintiff's counsel had a telephonic conversation with Defendant Kingdon Gould, Jr., in which Plaintiff understood that his counsel discussed Plaintiff's fears that he would be terminated to prevent him from drawing his retirement. *See* Defs.' Stmt. of Mat. Facts ¶ 5; Pl.'s Resp. ¶ 5. According to Plaintiff, "I retained Mr. Howard as my attorney because I thought I would be illegally terminated so I wouldn't draw my pension." *See* Defs.' Stmt. of Mat. Facts ¶ 6; Pl.'s Resp. ¶ 6.

Following his termination of May 18, 2001, Plaintiff filed an action in this Court on October 30, 2002. *See* Compl. at 1. Defendants, on January 13, 2005, filed a Motion for Summary Judgment with respect to Plaintiff's sole remaining claim, i.e., Plaintiff's Count IV claim alleging a violation of Section 510 of ERISA, pointing out that Plaintiff filed his Complaint roughly 17 ½ months after his termination. *See* Defs.' Mot. for Summ. J. at 2. Defendants contend that, although this Circuit has not squarely addressed the applicable statute of limitations for an ERISA Section 510 action, other jurisdictions are virtually unanimous in holding that the state statute of limitations for wrongful discharge or employment discrimination should apply. *Id.* at 3. Because the District of Columbia's statute of limitations for wrongful discharge as a result of employment discrimination is

one (1) year, Defendants argue that Plaintiff's Complaint must therefore be dismissed as untimely. *Id*. at 4. Plaintiff filed his Opposition on February 25, 2005, asserting instead that (1) given the special nature of the District of Columbia Human Rights Act, D.C. Code §§ 2-2501 *et seq*. ("DCHRA"), the application of the District of Columbia's wrongful discharge/employment discrimination limitations period is improper, *see* Pl.'s Opp'n at 4-6; and (2) given that Plaintiff's action is more analogous to a contract action rather than a human rights violation, the District of Columbia's three (3) year contract limitations period should apply, *id*. at 6-7. Defendant filed a Reply essentially reiterating its basic points on March 11, 2005, and followed the Reply with a Notice of Supplemental Authority submitted on July 19, 2005.

## II: LEGAL STANDARDS

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, Defendant, as the moving party, bears the "initial responsibility of informing the district court of the basis for [its] motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits which [it] believe[s] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or depositions, answers to interrogatories, and admissions on file, 'designate' specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal citations omitted).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary

judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party. *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251, 106 S.Ct. 2505 (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted). "Mere allegations or denials in the adverse party's pleadings are insufficient to defeat an otherwise proper motion for summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587, 106 S.Ct. 1348 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

### III: DISCUSSION

As noted above, Plaintiff's sole remaining count, Count IV of Plaintiff's Amended Complaint, alleges an ERISA Section 510 claim. Section 510 provides, in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section

>1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C. § 301 *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pensions Plan Disclosure Act.

29 U.S.C. § 1140 (2005). Section 510 and the applicable enforcement provision, 29 U.S.C. § 1132 (2005), do not provide a specific statute of limitations for actions alleging violations of Section 510. Accordingly, the appropriate limitations period is determined by reference to the state statute of limitations governing cases most analogous to the cause of action asserted by the plaintiff. *See North Star Steel Co. v. Thomas*, 515 U.S. 29, 33, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995); *Wilson v. Garcia*, 471 U.S. 261, 266-67 & n.12, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

  Plaintiff, in discussing which District of Columbia statute of limitations to apply, asserts that his "cause of action is more analogous to a contract than a human rights violation." Pl.'s Opp'n at 6. As such, Plaintiff suggests that the three (3) year statute of limitations period for contract actions set forth in D.C. Code § 13-301(7) is the appropriate limitations period. *Id.* at 5. In the alternative, Plaintiff suggests that the three (3) year "catch-all" limitations period "for which a limitation is not otherwise specially prescribed" is the appropriate provision under which to determine Section 510's limitations period for actions brought within this jurisdiction. *Id.* Plaintiff justifies this interpretation of his Section 510 claim by contending that "Plaintiff in this case is alleging that a contractual right to receive certain retirement benefits was abridged to his economic detriment. ERISA does not require that the actions of the Defendants be based upon the same standards applicable in the District of Columbia Human Rights Law nor does it intend to address these issues. [T]he Plaintiff's right to due process would be violated if a one year statute of limitations is engrafted on to [S]ection 510." *Id.* at 7.

Contrary to Plaintiff's assertions, a plain reading of Plaintiff's Amended Complaint demonstrates that his Section 510 claim, in particular, is more closely analogous to discrimination under the DCHRA than to a breach of contract. The gravamen of Plaintiff's claim is that he was terminated by PMI because of his age, in order to preclude him from receiving benefits under the Agreement. *See* Am. Compl. ¶¶ 7, 16. At his deposition, Plaintiff testified that he believed that he was terminated for the purpose of defeating his protected rights to his pension. *See* Defs.' Reply, Ex. A (12/10/04 Watts Dep.) at 107, 118, 127. The Agreement was not a contract for employment and explicitly stated that it was not such a contract; rather, it only provided for benefits to Plaintiff upon his retirement at or after age 60. Indeed, Plaintiff has acknowledged that he "was an employee 'at will' at the time of his discharge." *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss at 3, ¶ 5 (filed Feb. 14, 2003). These are precisely the kind of facts and type of allegations one would expect to see in a claim for wrongful or discriminatory termination based on age. As such, it is logical that the statute most closely analogous to Section 510 would be the District of Columbia's wrongful discharge/employment discrimination statute – the DCHRA. Indeed, the DCHRA specifically provides:

> It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the actual or perceived . . . age [] of any individual:
>
> (1) *By an employer*. – To fail or refuse to hire, *or to discharge, any individual*; or otherwise discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee[.]

D.C. Code § 2-1402.11(a)(1) (emphasis added).

Within the District of Columbia, a claim of wrongful discharge as a result of employment discrimination is governed by a one (1) year statute of limitations. *See* D.C. Code § 2-1403.16(a) ("A private cause of action pursuant to this chapter shall be filed in a court of competent jurisdiction within one year of the unlawful discriminatory act, or the discovery thereof[.]"). This one (1) year statute of limitations period is to be strictly construed. *See Brown v. Nat'l Acad. of Scis.*, 844 A.2d 1113, 1117 (D.C. 2004) ("We have strictly construed this one year limitation."). Similarly, an action alleging discrimination in connection with workers' compensation benefits must be brought within one year in the District of Columbia. *See* D.C. Code § 36-342 (creating cause-of-action); *id.* § 32-514 (one-year limitations period).

Due to the parameters of Plaintiff's Section 510 claim and the goals of the DCHRA, the Court concludes that the one (1) year limitations period under the DCHRA is the applicable statute of limitations for a Section 510 action within the District of Columbia. Because Plaintiff's cause-of-action, or discovery thereof, accrued at the latest on May 18, 2001, i.e., the date of Plaintiff's termination, but Plaintiff did not file a Complaint with this Court until 17 ½ months later, on October 30, 2002, it would appear that Plaintiff's Section 510 claim is untimely and Defendant's Motion for Summary Judgment should be granted.

The Court's reasoning is consonant with both the suggestions of the D.C. Circuit and the holdings of virtually every other jurisdiction. Notably, while the D.C. Circuit has not yet squarely addressed the applicable statute of limitations for a Section 510 action, the D.C. Circuit in *Andes v. Ford Motor Co.* cited with approval the decision of other jurisdictions to apply the state statute of limitations for wrongful discharge or employment discrimination to Section 510 claims. *See* 70 F.3d 1332, 1337 n.7 (D.C. Cir. 1995) ("When confronted with the question of the appropriate limitations for § 510, the courts of appeals have often applied a state's wrongful discharge or

employment discrimination statute.") (citing cases).  Virtually every other Court of Appeals that has addressed the subject has reached the same or a similar result.  *See, e.g.*, *Sanberg v. KPMG Peat Marwick, LLP*, 111 F.3d 331, 336 (2d Cir. 1997) (a Section 510 claim is most analogous to claims involving wrongful discharge to prevent an employee from obtaining workers' compensation benefits); *Gavalik v. Cont'l Can Co.*, 812 F.2d 834, 843-46 (3d Cir. 1987), *cert. denied*, 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987) (holding that the district court did not err in determining that a Section 510 action most closely resembles action for employment discrimination); *McClure v. Zoecon, Inc.*, 936 F.2d 777, 778 (5th Cir. 1991) (affirming district court's decision to apply the statute of limitations applicable to "wrongful discharge and employment discrimination claims" to a Section 510 action); *Leemis v. Med. Servs. Research Group, Inc.*, 75 Fed. Appx. 986, 987-88 (6th Cir. 2003) (per curium) (noting that "neither party on appeal disputes the conclusion of the district court that Leemis's federal complaint 'is most analogous to a wrongful discharge or retaliatory discharge claim'"); *Teumer v. Gen. Motors Corp.*, 34 F.3d 542, 549-50 (7th Cir. 1994) (the statute of limitations applicable to retaliatory discharge actions is applicable to Section 510 claims); *Burrey v. Pac. Gas & Elec. Co.*, 159 F.3d 388, 396 (9th Cir. 1998) (affirming district court that applied the statute of limitations period for wrongful discharge to a Section 510 claim); *Held v. Mfrs. Hanover Leasing Corp.*, 912 F.2d 1197, 1205 (10th Cir. 1990) (agreeing with district court that claim most analogous to a Section 510 action is a claim for employment discrimination); *Byrd v. MacPapers, Inc.*, 961 F.2d 157, 160 (11th Cir. 1992) (concluding that a Section 510 claim was most closely analogous to a claim for retaliatory discharge for filing a workers' compensation claim); *see also Berger v. AXA Network, LLC*, 370 F. Supp. 2d 751, 754 (N.D. Ill. 2005) (under New York law, Section 510 claim is most analogous to a

retaliatory discharge claim under New York's Workers' Compensation statute). In contrast, Plaintiff has not cited to, and the Court has not located, a single jurisdiction that has held that a breach of contract claim is analogous to a Section 510 action.

Plaintiff attempts to escape this reasoning by suggesting that the DCHRA is "exempted from use with the federal statute," i.e., ERISA. *See* Pl.'s Opp'n at 5. According to Plaintiff, because D.C. Code § 2-1401.03(c) provides that "nothing in this chapter shall be construed to supersede any federal rule, regulation or act," and because ERISA Section 510 does not have an explicit statute of limitations, to engraft the DCHRA's statute of limitations onto the federal cause-of-action created under ERISA would be a violation of the DCHRA's parameters. *Id*. at 5-6 (contending that the District of Columbia's statute of limitations should be treated differently because Congress reviews the District of Columbia's laws). As such, Plaintiff contends that "[t]he significance and uniqueness of the District of Columbia and its law" entails that the DCHRA cannot be used as a relevant reference point for Section 510's limitations period.

Plaintiff's contention is without merit for two reasons. First, Plaintiff cites no case law, legislation, or legislative history in support of his argument that Congress specifically intended that the DCHRA was not to provide statute of limitations to federal statutes that are analogous but silent on the issue. Second, Plaintiff misconstrues the parameters and reach of the DCHRA. While the DCHRA certainly states that it cannot "supersede any federal rule, regulation or act," D.C. Code § 2-1401.03(c), it is illogical to find that when a federal statute silent on the issue of a limitations period "borrows" such a period from an analogous state statute, that state statute has "superseded" the federal statute. The American Heritage College Dictionary, Third Edition, defines "supersede" as "1. To take place of; replace. 2. To cause to be set aside, esp. to displace as inferior or antiquated." *See* AMERICAN HERITAGE COLLEGE DICTIONARY 1363 (3d ed. 1997); *see also*

BLACK'S LAW DICTIONARY 1452 (7th ed. 1999) ("To annul, make void, or repeal by taking place of"). Accordingly, "supersede," by its very nature, contemplates that something which is present is replaced, displaced, or annulled. In contrast, when a federal statute is simply silent on a subject, such as a limitations period, the act of turning to an analogous state statute does not replace, displace, or annul anything; rather, a provision is essentially inferred or grafted onto the federal statute, filling a void and leaving everything in place. As such, when a court turns to the DCHRA's limitations period to find the amount of time that a plaintiff has to bring a Section 510 claim in the District of Columbia, no "superseding" of a federal act has occurred. Given that nothing within the DCHRA prevents such a "borrowing" in the context of Section 510, the Court holds that the one (1) year limitations period under the DCHRA is the applicable statute of limitations for a Section 510 action within the District of Columbia and that Plaintiff's Complaint, brought 17 ½ months after his cause-of-action accrued, must be dismissed with prejudice as untimely.

### IV: CONCLUSION

For the reasons set forth above, the Court shall grant Defendant's Motion for Summary Judgment. An Order accompanies this Memorandum Opinion.

Date:   March 12, 2006

>                             */s/*
>                             COLLEEN KOLLAR-KOTELLY
>                             United States District Judge